AO 91 (Rev. 11/82)

# CRIMINAL COMPLAINT

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>JUAN LUIS CARDONA-RAMIREZ,<br>aka "Luis Anthony Ordin,"<br>("Juan CARDONA"), and<br>CESAR EDUARDO CORTES | DOCKET NO.<br><br>MAGISTRATE'S CASE NO.<br><br>FILED<br>CLERK, U.S. DISTRICT COURT<br>FEB -5 2016<br>CENTRAL DISTRICT OF CALIFORNIA<br>EASTERN DIVISION   BY DEPUTY |

Complaint for violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B)

| NAME OF MAGISTRATE JUDGE<br>HONORABLE DAVID T. BRISTOW | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Riverside, California |
|---|---|---|

| DATE OF OFFENSE<br>February 3-4, 2016 | PLACE OF OFFENSE<br>Riverside County | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

Title 21, U.S.C. § 841(a)(1), (b)(1)(B)

Beginning on a date unknown, and continuing to on or about February 4, 2016, in Riverside County and elsewhere, within the Central District of California, defendants **JUAN LUIS CARDONA-RAMIREZ, aka "Luis Anthony Ordin," ("Juan CARDONA"), and CESAR EDUARDO CORTES**, conspired and agreed with each other to knowingly and intentionally distribute and possess with intent to distribute at least 100 kilograms or more of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B).

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>Shane Van Gundy |
|---|---|
| | OFFICIAL TITLE<br>Special Agent – Department of Homeland Security |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[(1)]<br>DAVID T. BRISTOW | DATE<br>February 5, 2016 |
|---|---|

[(1)] See Federal Rules of Criminal Procedure 3 and 54

AUSA Daffodil Tyminski x0917          REC: Detention

## AFFIDAVIT

I, Shane R. Van Gundy being duly sworn, declare and state as follows:

### I. INTRODUCTION

1. I am a ("SA") with the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE") / Homeland Security Investigations ("HSI") and I have been so employed since September of 2009. I am currently assigned to the Assistant Special Agent in Charge ("ASAC") Riverside/San Bernardino Narcotics/Financial Investigations Group. In this assignment my primary responsibility is to investigate drug trafficking organizations ("DTOs"), and their related drug and financial crimes. As a law enforcement officer of the United States, within the meaning of Title 18, United States Code, Section 2510(7), I am empowered to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, United States Code, Section 2516.

2. Prior to joining HSI, I was a Border Patrol Agent from October 2005 to September of 2009. As a Border Patrol Agent, my duties included analyzing narcotics trafficking patterns along the southern border of the United States, apprehending drug traffickers, and interviewing narcotics smugglers, among other things.

3. As an HSI Agent I have participated in multiple narcotics and financial investigations at the federal and state levels. In conducting these investigations, I have utilized a variety of investigative techniques and resources, including

physical and electronic surveillance and various types of informants and cooperating sources.  I have assisted in both state and federal wiretap investigations since 2009.

4.    Through my training, experience, and interaction with experienced SAs, Task Force Officers ("TFOs"), and other narcotics investigators, I have become familiar with the methods employed by narcotics traffickers to smuggle, safeguard, and distribute narcotics, and to collect and launder narcotics-related proceeds.  I have learned that narcotics traffickers and money launderers operate within a structured hierarchy in which the menial and labor related tasks such as unloading, transporting and handling large quantities of narcotics and bulk cash is left to low ranking members of the organization.  Within the structure of the organization there are progressively greater responsibilities and power for narcotics traffickers as they gain expertise, knowledge, experience and older narcotics traffickers are either apprehended by law enforcement or retire. Furthermore, the progression of narcotics traffickers through the organizational hierarchy results in greater financial gain coupled with a decreased risk of being apprehended by law enforcement during a narcotics event.  Therefore, narcotics traffickers who occupy a position of greater authority within the organization will be identified by their peripheral involvement in narcotics activities, disparities in legitimate income weighed against assets and life style, contacts through phone, email and message services with persons directly involved

in the handling of narcotics and bulk cash, as well as other means.

5. I have specialized training and experience in narcotics trafficking and the related financial crimes. I have participated in numerous drug and financial investigations, which have included the use of confidential sources and undercover officers, physical surveillance, electronic surveillance, the execution of search and arrest warrants, the use of court-ordered intercepts of wire and/or electronic communications, dialed number recorders (pen registers), telephone toll analysis, the arrests of drug traffickers, and the analysis of seized records, physical evidence, and taped conversations. Over the course of my employment as a law enforcement officer, I have participated in investigations that involve one, or all, of the following crimes: possession, distribution, possession with intent to distribute, and manufacture of controlled substances, and related laundering of monetary instruments. I have been present during the execution of search warrants where controlled substances were found. I have also spoken with defendants, confidential informants, and other witnesses who have extensive knowledge of the inner workings of major narcotics trafficking organizations.

6. HSI Riverside is investigating various members and associates of the Cardona family, who are believed to be involved in the transportation and distribution of marijuana and other drugs into the United States from Mexico. Throughout the course of the investigation, HSI Riverside agents have linked

the activities of the Cardona family drug trafficking organization ("Cardona DTO") to multiple violations of United States law to include narcotics trafficking and distribution, money laundering, bulk cash smuggling, structuring, and other drug trafficking related charges.

7. The acting head of the Cardona DTO, Juan Luis CARDONA-RAMIREZ, also known as ("aka") "Luis Anthony Ordin," ("Juan CARDONA") directs the organization from Riverside, California. There are numerous persons both known and unknown to the investigation who have participated in various violations of law that have been linked to the CARDONA DTO; however, Juan CARDONA's principal co-conspirators and most trusted members of the DTO are his relatives, including his brother in law, Cesar Eduardo CORTES, Jr. ("Cesar CORTES")[1] (collectively, the "Target Subjects"). This affidavit is made in support of an application to search nine subject premises located in the Riverside area, as described below.

8. The decisions I have made and the conclusions I have reached are based not only upon my own training and experience, but also on the training and experience of other federal agents, task force officers, and detectives from participating agencies, with whom I have discussed this case. Thus, when I say something is based on my training and experience, it is based on not only my personal training and experience but the collective

---

[1] Cesar CORTES was misidentified in an affidavit submitted to this Court earlier today. In that affidavit, we identified him as "Cesar Cortes-Cruz," aka "Hector Dominguez," which as I confirmed this morning, is CORTES's father.

training and experience I have accumulated by speaking with other law enforcement investigators.

## II.   PURPOSE OF AFFIDAVIT

9.   This affidavit is made in support of an application for a complaint charging Juan CARDONA and Cesar CORTES with a violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B) (Possession With Intent to Distribute 100 kilograms or more of marijuana). Specifically, there is probable cause to believe that on or about February 4, 2016, CARDONA and CORTES, in Riverside County, within the Central District of California, possessed with intent to distribute at least 100 kilograms of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A).

10.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter.

## III.   STATEMENT OF PROBABLE CAUSE

A.   <u>Juan CARDONA, Ceasar CORTEZ, and two other individuals Were Apprehended on February 4, 2016, While Participating in a Marijuana Smuggling Operation.</u>

11.   On January 31, 2016, I was contacted by HSI Special Agent Derren Henderson from the San Diego Maritime Task Force ("MTF") group. SA Henderson told me that a confidential source

("CS-1")[2] informed SA Henderson that a pleasure craft transporting bales of marijuana would be arriving at the San Diego marina on January 31, 2016 from Mexico. Furthermore, CS-1 would be responsible for taking the boat to a nearby storage lot. CS-1 would then be responsible for transporting the pleasure boat on a flatbed truck to the Riverside/Moreno Valley area.

12. According to SA Henderson, due to poor weather, CS-1 did not transport the boat to the storage yard until February 1, 2016. At that time, HSI San Diego established surveillance on the storage yard and the boat and began coordinating a possible controlled delivery with HSI Riverside. HSI San Diego maintained continual surveillance on the pleasure boat until February 3, 2016.

13. At approximately 11:00 p.m. on February 3, 2016, CS-1 began transporting the pleasure boat and flatbed trailer north on Interstate 15. HSI San Diego began a mobile surveillance to follow the vehicle as it headed north. According to SA Henderson, CS-1 had been informed that he was to travel to a Home Depot parking lot located on Collier Ave, in Lake Elsinore, California. Prior to beginning to drive northbound, CS-1 was able to look into the pleasure craft and see large plastic

---

[2] CS-1 has arrests, but no convictions for domestic violence, and multiple felony convictions for theft. CS-1 is a United States citizen. He is cooperating with law enforcement in exchange for payment. I believe that CS-1 has provided credible information in this investigation because I have been able to corroborate CS-1 statements with observations made on surveillance by other HSI agents, including HSI air support.

wrapped bundles of what he believed to be marijuana loaded on the boat.

    a.  At approximately 2:30 a.m. on February 4, 2016, the flatbed truck carrying the pleasure craft exited Interstate 15 at Central Ave in Lake Elsinore, California. At this time, the surveillance consisted of HSI San Diego and HSI Riverside agents and TFOs. CS-1 was then instructed to go east on Central Ave/Highway 74 to a Lowe's parking lot to meet a person or persons there. CS-1 began traveling that direction and was approached by a dark red pickup truck bearing CA plate 45108E1 driven by CORTES. I observed the two vehicles stop and the drivers appeared to speak briefly with each other. The dark red pickup truck and flatbed truck then began traveling eastbound on Highway 74 in tandem. Records checks were requested for the red pickup truck through law enforcement indices and HSI Riverside discovered the truck was registered to a "Cesar Cortes" at a residence in Nuevo, California.

    b.  The two vehicles continued eastbound until they arrived at a small Mexican restaurant called "Guadalalupe" on the southwest side of Highway 74 near Ethanac Road at approximately 2:45 a.m. I observed the vehicles on the side of the road for approximately 10 minutes without movement and then drove south east down a small dirt road and parked on a large lot in front of a residence near the intersection of Theda Street and Juniper Meadows Lane in the city of Perris, California (the "Theda Street lot"). The street address of the Theda Street lot is unknown, however, the approximate GPS

position of the property is at N 33 degrees 44.76', West -117 degrees 16.5' using the decimal degree GPS system.

14. At approximately 7:30 a.m. on February 4, 2016, Customs and Border Protection Air Operations ("Omaha") joined the joint surveillance at the Theda lot. At approximately 8:40 p.m. Omaha saw two Hispanic males moving around the pleasure boat. At approximately 9:00 a.m., Omaha saw 6 Hispanic males taking large plastic wrapped bundles out of the boat and into the garage attached to a property in Perris, California (the "Theda lot"). At approximately 10:30 a.m. Omaha observed bundles being loaded from the garage of a house on the Theda lot into a white pick-up truck. Omaha also observed several bundles go into a residence on the Theda lot. At approximately 10:50 p.m., the flat bed and the boat left the Theda lot.

15. At approximately 11:00 a.m. HSI Riverside agents began to see activity around the Theda lot and secured the property. At that time, HSI Riverside agents identified Juan CARDONA and Cesar CORTES. At that time HSI Riverside agents were able to see large black plastic bags with marijuana residue in plain view on the ground next to the residence on the Theda lot. Thereafter, agents proceeded to secure the property and conducted a security sweep of the Theda lot and the related garages to determine whether there were any other individuals on the properties. CORTES, CADRDONA, and two other individuals were detained. While conducting the sweep, agents observed numerous bales of marijuana in large storage lockers in a garage on the Theda lot.

16. On February 4, 2016, the Honorable David T. Bristow issued search warrants for locations on the Theda lot. In the course of the search, HSI agents found numerous bales of marijuana and other drug paraphernalia.

B. **Juan CARDONA'S Admits Involvement With the Marijuana Smuggling Operation.**

17. After his arrest, Juan CARDONA was read his Miranda rights and agreed to make a statement. According to HSI, SAs Felix Cisneros and David Wright, CARDONA admitted that he has several family members who are involved with drugs, including Cruz Martin Cardona (who lives in Mexico and is believed to be Juan CARDONA's brother). CARDONA stated, further, that his nephew, Jose Gonzales told CARDONA that Cruz Martin Cardona, needed a favor to park a boat containing drugs at the Theda lot, which belongs to another Cardona family member. According to CARDONA, the boat with drugs was supposed to go to a warehouse in Los Angeles, near Olympic Avenue and Lorena Avenue, but ended up at the Perris house because they didn't think the truck hauling the boat would make it due to the weight of the load.

18. CARDONA alleged that the drugs belong to a person nicknamed "El Tostado" and an individual Martin Last Name Unknown ("LNU") ("Martin LNU"), who resides in the United States and Mexico and who is responsible for selling the drugs here. CARDONA stated that Martin LNU is the organizer of the warehouse in Los Angeles and would pay him $10,000 to receive the boat.

19. CARDONA indicated that he had gone to the Perris house around midnight or 1 a.m. on February 4, 2016, to see if the boat was there, but didn't see it there and left. He and his brother returned in the morning to check on some workers and saw a truck with a boat leaving along with another white truck.

20. CARDONA indicated that Martin LNU had told him that the white truck had 400 pounds of marijuana in it and would get the rest later.

C. **Cesar CORTES's Involvement With the Marijuana Smuggling Operation.**

21. As noted above, HSI agents conducted surveillance on truck hauling trailer with boat from San Diego to Lake Elsinore, California. At a Lowes parking lot, I observed a red pick-up truck meet up with CI-1 (and the boat) and then travel together to a restaurant in Perris, California where they parked and remained for a short while. Later the truck which was being driven by a person later identified to be CORTES was observed to lead the boat to the Perris residence.

22. Later that afternoon, SA David Wright and SA Feliz Cicernos detained CORTES while leaving the Perris residence in the same red truck that CORTES had met with CI-1 in earlier that day. SAs Wright and Cisneros also stopped a second truck leaving the Theda lot, which was occupied by Juan CARDONA and Jose Cardona. CORTES stated that he did not know them and was not with them. Juan CARDONA and Jose Cardona are believed to be CORTES's uncles.

23. When CORTES was detained, he was taken out of his red pickup truck, and SA David Wright took the keys from the truck. Agents then determined that the key opened a lock found on the storage cabinets within the garage at the Perris residence. Those storage cabinets contained bales of marijuana.

## IV. CONCLUSION

24. Based on the foregoing, I have probable cause for the issuance of a complaint charging Juan CARDONA and Cesar CORTES with a violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B) (Possession With Intent to Distribute 100 kilograms or more of marijuana).

SHANE VAN GUNDY, Special Agent
Department of Homeland Security
Homeland Security Investigations

Subscribed to and sworn before me
this 5th day of February, 2016.

HONORABLE DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE